HUSET, Plaintiff, v. MILWAUKEE DRESSED BEEF COMPANY and another, Defendants and Appellants: RUBY CHEVROLET, INC., and another, Defendants and Respondents.*

*No. 77. Argued February 3, 1970.—Decided March 6, 1970.*
(Also reported in 174 N. W. 2d 740.)

---

* Motion for rehearing denied, with costs, on April 28, 1970.

318

"...

320

For the appellants there was a brief by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs.*

For the respondents there was a brief by *Prosser, Zimmermann, Wiedabach, Koppa & Lane,* attorneys, and *David M. Quale* of counsel, all of Milwaukee, and oral argument by *Mr. Quale.*

WILKIE, J. All third-party claims have been settled out and this controversy, in short, is over which of the insurance companies involved must pay for the damage.

Appellants raise three issues on this appeal:

1. When a lessee, under the terms of lease for a motor vehicle and equipment, agrees to indemnify the lessor against liability arising out of the use or operation of the leased vehicle and an accident occurs involving an unrelated vehicle which ran into the spare tire of the leased vehicle which had dropped from the tire carrier of the leased vehicle upon the highway shortly before, and where the lease also provides that it was lessor's obligation to repair and maintain the leased vehicle and equipment in first-class condition, is the lessor's obligation under the lease to be measured only by standards of negligence?

2. Under such circumstances, is the lessee obligated to indemnify the lessor and its insurer against payment of damages to the third persons and also to pay the costs of defense and investigation?

3. When the lessor of a motor vehicle leased to a private motor carrier obtains a policy of insurance which contains an endorsement providing that the policy is obtained to effect compliance with ch. 194, Stats., among others, is such policy required to extend to cover the liability of the lessee of such vehicle as the operator thereof?

Appellants Milwaukee and Employers' first argument is that by virtue of the insurance policy issued to Ruby, since Ruby was negligent in making repairs and inspecting the truck, Zurich is liable for the amount paid in damages to the various plaintiffs. However, the trial court in its findings No. 3 and No. 4 implicitly found that Ruby was not negligent since the bolt holding the tire was fractured as a result of an outside force shortly before the tire fell off.

The appellants in their brief do not raise any issue as to the sufficiency of the evidence to support these findings. They do contend that the trial court, in making the findings, failed to give appropriate effect to the contractual obligations of lessor Ruby. The argument is that under the terms of the lease Ruby had the contrac-

tual duty to maintain the vehicle and to keep it, together with its equipment "in first-class mechanical condition and repair." They argue that since it is a fact that the tire fell off the truck, this must have been due to Ruby's failure to keep the vehicle in the condition it contracted to maintain it. Thus, they conclude Ruby must respond in damages for the injuries subsequently incurred. Their argument continues that this liability exists regardless of the indemnity clause of the lease and irrespective of whether it is based on tort or breach of contract principles.

The appellants cite several cases from other jurisdictions as authority for the proposition that breach of contract or warranty may be the basis for liability.[1] However, here we are not dealing with a situation where Ruby undertook to repair the tire carrier of the truck and failed to repair it as agreed to in the contract. There is nothing in the record here to indicate that Ruby could have in any way known or foreseen that the bolt would break and the tire would fall from its carrier. Quite the contrary, the testimony of one of the expert witnesses, whom the trial court could choose to believe, was that the bolt was damaged only a short time—two days to two hours—before it fractured completely, and the tire fell off. Under these circumstances, it would be unreasonable to expect that Ruby should have repaired the bolt since there is nothing to indicate the bolt was in need of repair at the time Ruby inspected the truck.

Since there is no finding as to the negligence of Ruby in keeping the truck in repair and in fact the evidence indicates that Ruby was not negligent in this or any other respect, we need not determine whether the instant

[1] *See Hutchison v. Ball* (1948), 77 Ga. App. 199, 47 S. E. 2d 913; *Satterlee v. Lawler* (1923), 155 Minn. 181, 193 N. W. 118; *Manzer v. Barnes* (1948 Tex. Civ. App.), 213 S. W. 2d 464. *See also* 38 Am. Jur. 2d, *Garages,* p. 355, sec. 53.

indemnification provision expressly provides indemnification for negligence solely caused by the alleged indemnitee.[2]

Appellants' second and alternative argument is that the trial court erroneously held that in view of the terms of the indemnification agreement, the Zurich insurance policy issued to Ruby did not cover the liability of Milwaukee.

The Zurich policy was a liability policy containing the so-called "Wisconsin insurance endorsement for blanket policies."[3] Under this endorsement several statutory provisions are incorporated into the policy provisions. For example, sec. 194.44, Stats., specifies that when a leased motor vehicle is used by a private motor carrier under a permit issued to the lessor "the person in whose name the permit is issued shall be responsible to the state for the payment of all taxes, fees and other payments due under chs. 194 and 341 . . . . The owner of

---

[2] See generally, Mustas v. Inland Construction, Inc. (1963), 19 Wis. 2d 194, 120 N. W. 2d 95, 121 N. W. 2d 274. See also Vulcan Materials Co. v. Quality Limestone Products, Inc. (1969), 41 Wis. 2d 705, 165 N. W. 2d 204.

[3] "This policy is issued in order to effect compliance by the assured as a Common Motor Carrier of Property, and/or Contract Motor Carrier, and/or Common Motor Carrier of Passengers, and/or any carrier of passengers by motor bus, and/or Person Engaged in Leasing Motor Vehicles without Drivers, and/or Person, Firm or Corporation Renting Cars, and/or Itinerant Merchant Trucker, and/or every owner and operator of a school bus and also the school district or other governmental agency which contracts for its operation, with Chapter 194, Sections 194.41 and 194.44, Chapter 344, Section 344.51, Chapter 110, Section 110.10 (6) (a), Chapter 40, Section 40.57 (5) and Chapter 341, Section 341.51 (2m), Wisconsin Statutes, and notwithstanding any provision to the contrary herein contained, all of the coverage (Cargo excepted), required by said Sections 194.41, 194.44, 344.51, 110.10 (6) (a), 40.57 (5) and 341.51 (2m); Wisconsin Statutes, is hereby provided to the assured with respect to the operation, maintenance and use of any and all motor vehicles whether the motor vehicles are specifically described in the policy or not."

each such leased motor vehicle or trailer shall before leasing the same comply with the insurance requirements of s. 194.41. . . ." The pertinent provisions of sec. 194.41, after requiring the obtaining of insurance, specifies that the insurance" . . . shall provide that the indemnitor [the insurance carrier] shall be directly liable for and shall pay all damages for injuries to or for the death of persons . . . that may be recovered against the owner or operator of each such motor vehicle . . . ."

Appellants argue that these statutory provisions nullify the separate indemnity agreement contained in paragraph 5 of the lease between Ruby and Milwaukee, and conclude that Ruby is liable for the damages or at least the damages should be prorated between the two insurance companies.

Thus, the crux of the case can be stated in question form as: Can the parties effectively agree to indemnification provisions which are different from the plan contemplated in the statutes referred to in the blanket endorsement?

In short, they can.

Appellants, in arguing that this type of agreement is impermissible, rely heavily on the case of *Miller v. Kujak*.[4] However, *Miller* is readily distinguished. In *Miller* the major issue was whether the insurance policy of the lessee covered the driver (an employee of the lessor) of the leased vehicle. The sole insurance carrier involved contended its policy only covered the lessee and that it became subrogated to the lessee's rights to recover against the tort-feasor driver and his employer (the lessor). *Miller* did not involve a lease agreement which contained indemnity provisions. In the instant case, Milwaukee has expressly agreed to indemnify and save and hold Ruby harmless from any and all claims. *Miller* does not stand for the proposition that the lessor and

---

[4] (1958), 4 Wis. 2d 80, 90 N. W. 2d 137.

lessee, even though both may be required by statute to procure insurance, cannot decide between themselves who shall ultimately bear the loss sustained by the payment of damages to a third party.

Other cases cited by appellants as authority for their argument can be distinguished because none involved lease agreements whereby the lessee expressly agreed to indemnify and hold harmless the lessor.[5]

The various provisions of the statutes referred to do not prohibit this kind of agreement between the parties. Sec. 194.02, Stats., spells out the intent of the legislature in enacting ch. 194.[6] A reading of this section indicates that the legislature clearly intended to provide protection to innocent third persons. Here, the public has been protected (all third-party claims have been settled); the agreement does not contravene any public policy since the parties, by express agreement, have determined who shall bear the loss as between themselves. As long as the interests and rights of third persons are not adversely affected, there is no impediment to parties entering into the type of indemnity agreement contained in the instant lease.[7]

[5] See *Continental Casualty Co. v. Transport Indemnity Co.* (1962), 16 Wis. 2d 189, 114 N. W. 2d 137; see also *Peterson v. Schmude* (1964), 23 Wis. 2d 9, 126 N. W. 2d 500; *Rusch v. Mielke* (1940), 234 Wis. 380, 291 N. W. 300.

[6] "194.02 **Legislative intent.** It is hereby declared to be the purpose and policy of the legislature in enacting chapter 194 to confer upon the motor vehicle department and the public service commission the power, authority and duty to supervise and regulate the transportation of persons and property by motor vehicles upon or over the public highways of this state in all matters, whether specifically mentioned herein or not, *so as to protect the safety and welfare of the traveling and shipping public in their use of the highways;* . . . ." (Emphasis added.)

[7] See generally, *Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 153 N. W. 2d 6. See also Collins and Dugan, *Indemnification Contracts—Some Suggested Problems and Possible Solutions,* 50 Marq. L. Rev. (1966), 77.

The trial court was entirely correct in stating:

"The Wisconsin Insurance Endorsement attached to the Zurich policy does not override the hold harmless provisions of the Lease Agreement. Those endorsement provisions are required and would be a protection to the third parties injured or damaged—sec. 194.02 Wis. Stats. —but as to the parties to the Agreement, the provisions thereof are controlling. *Cernohorsky v. Northern Liquid Gas Co.* 268 Wis. 586, 592; *Hartford Acc. & Ind. Co. v. Worden-Allen Co.*, 238 Wis. 124."

One issue remains on this appeal: Are Ruby and Zurich entitled to interest, costs, disbursements and reasonable attorney fees since the date judgment was entered—January 28, 1969? In other words, are the respondents entitled to recover additional costs, disbursements, and attorney's fees incurred as a result of this appeal?

The trial court entered judgment against Milwaukee and Employers for all amounts paid by Ruby and Zurich in settlement of claims arising out of the accident with interest, together with litigation expenses.

In *Herchelroth v. Mahar*,[8] this court said:

"Since the indemnity has been construed to cover Wolpin's litigation expenses, the trial court is authorized to determine the reasonable fees and expenses incurred by Wolpin in this action since May 25, 1966, and to add such additional fees and expenses to the judgment payable to Wolpin by Belt, together with interest on the original judgment from the date of its entry."

On this authority it is clear that the respondents are entitled to these additional amounts.

*By the Court.*—Judgment affirmed; cause remanded for further proceedings consistent with this opinion.

---

[8] *Supra,* footnote 7, at page 153.