152 Ill. App.3d 225 (1987)
504 N.E.2d 256
INSURANCE CAR RENTALS, INC., Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant and Counterplaintiff-Appellant (Planet Insurance Company et al., Defendants-Appellees; Planet Insurance Company et al., Counterdefendants-Appellees).
No. 3-86-0150.
Illinois Appellate Court  Third District.
Opinion filed February 13, 1987.
*226 John A. Kendrick, of Westervelt, Johnson, Nicoll & Keller, of Peoria (Robert D. Jackson, of counsel), for appellant.
Kavanagh, Sculy, Sudow, White & Frederick, of Peoria (Laurie M. Judd and Dianne M. Wolfe, of counsel), for appellee Insurance Car Rentals, Inc.
W. Thomas Johnston and Dianne M. Wolfe, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee Planet Insurance Company.
Judgment affirmed.
PRESIDING JUSTICE SCOTT delivered the opinion of the court:
This appeal arises out of an action and a counterclaim for declaratory *227 judgment, filed by Insurance Car Rentals, Inc., and State Farm Mutual Automobile Insurance Company, respectively, to determine liability for damages incurred as a result of an automobile accident involving the renters of a vehicle owned by Insurance Car Rentals, Inc. The circuit court rendered a declaratory judgment in favor of Insurance Car Rentals, Inc., and Planet Insurance Company, the insurance carrier of the rental agency.
On October 24, 1983, Robert Wille (Wille) rented a 1982 Chevrolet Chevette from Insurance Car Rentals, Inc. (Car Rentals), after being referred to Car Rentals by an adjuster for State Farm, for the use of himself and his wife during a period of time in which his personal auto was being repaired.
Car Rentals rents cars and trucks on a temporary basis to replace disabled vehicles and had, at the time of Wille's rental, filed a motor vehicle liability policy in compliance with the Illinois Vehicle Code (Motor Vehicle Code) (Ill. Rev. Stat. 1985, ch. 95 1/2, par. 9-101), which requires car rental agencies to file proof of financial responsibility with the Illinois Secretary of State. The business automobile policy was issued by Planet Insurance Company (Planet) which insures against bodily injury in the amount of $100,000 per person (or $300,000 per accident) and against property damage in the amount of $50,000. Car rentals paid insurance premiums to Planet for rental vehicles on a per-use basis.
Car Rentals offers its customers two options with respect to insurance coverage. First, a rental program can be obtained whereby the customer pays $18 per day for a rental car with complete insurance coverage provided through Car Rentals' Planet policy. Second, a customer may, as in Mr. Wille's instance, rent a car for $13.50 per day and rely on his insurance company to provide insurance coverage. Mr. Wille signed a form entitled "Temporary Substitute Automobile Rental Agreement for Insurance Car Replacement Only," which, in pertinent part, states, "INSURANCE PROTECTION FOR TEMPORARY SUBSTITUTE AUTOMOBILE TO BE PROVIDED BY CUSTOMER'S EXISTING INSURANCE. IF CUSTOMER'S INSURANCE FAILS FOR ANY REASON TO AFFORD COVERAGE, CUSTOMER SHALL BE SOLELY RESPONSIBLE."
As the usual course of business for Car Rentals, where a customer chooses to rely on his own insurance coverage, Car Rentals checks the customer's driver's license for pertinent information and also checks with the customer's insurance company in order to confirm the policy number, expiration date, and several items of coverage. Before renting to Willes, Car Rentals contacted State Farm agent Norm Geier in *228 order to verify Mr. Wille's insurance coverage. There is no discrepancy as to whether Mr. Geier confirmed the policy; the Willes were insured by State Farm. There is, however, a question as to whether Mr. Geier confirmed that the Willes' policy would cover the automobile from Car Rentals. The Willes' policy, in pertinent part, reads:
"3. Temporary Substitute Car, Non-Owned Car, Trailer.
If a temporary Substitute Car * * * has other vehicle liability coverage on it, then this coverage is excess. THIS COVERAGE SHALL NOT APPLY:
A. IF THE VEHICLE IS OWNED BY ANY PERSON OR ORGANIZATION IN A CAR BUSINESS; AND
B. IF THE INSURED OR THE OWNER HAS OTHER LIABILITY COVERAGE WHICH APPLIES IN WHOLE OR IN PART AS PRIMARY, EXCESS OR CONTINGENT COVERAGE."
Temporary substitute car, as defined by State Farm, is:
"a car not owned by you or your spouse, if it replaces your car for a short time. Its use has to be with the consent of the owner. Your car has to be out of use due to its breakdown, repair, servicing, damage or loss. A temporary substitute car is not considered a non-owned car."
Since Mr. Wille opted for the rental agreement which did not include a cost for insurance coverage, Car Rentals did not include the 1982 Chevrolet Chevette rented by Wille in its premium payment to Planet.
On November 15, 1983, Mrs. Wille, while driving the rented Chevette, was involved in an auto accident with Marjorie and Thomas Burke (the Burkes). The Burkes filed suit against Mrs. Wille for personal injury and property damage. The Burkes demanded State Farm to compensate for injuries and damages, and State Farm in turn demanded Planet to defend and indemnify the Willes. Planet rejected State Farm's demand. Subsequently, State Farm, Planet, and Car Rentals entered into an agreement to resolve the Burkes' claims but which would not prejudice any party's legal or contractual rights. State Farm, in accordance with that agreement, paid the Burkes $3,000 in settlement of their suit, and it paid Car Rentals $2,096.98 for damage to the rental vehicle as a result of the accident.
Car Rentals filed a complaint for declaratory judgment solely against State Farm to establish State Farm's liability for all damages arising from the accident. State Farm filed a declaratory judgment counterclaim against Car Rentals, Planet, and the Burkes, asserting that the financial-responsibility provisions of the Motor Vehicle Code *229 and the public policy of Illinois make the "waiver" term of the rental agreement between Car Rentals and the Burkes unenforceable. The trial court granted declaratory judgment to Car Rentals and Planet and against State Farm. The court found that the "waiver" provision was not barred by the Motor Vehicle Code or the public policy of Illinois and that State Farm is primarily liable to pay the damages for which the Willes are responsible. State Farm filed this appeal.
Appellants raise five issues on appeal: (1) whether Illinois law or public policy requires Car Rentals to provide liability coverage to its renter, Mr. Wille, if it elects to submit an insurance policy to the Secretary of State as proof of financial responsibility; (2) whether Illinois law or public policy permit Car Rentals to waive insurance coverage by its insurance carrier, Planet, through language in a rental agreement wherein, for a lower rental cost, the customer can voluntarily choose to rely solely on his personal auto insurance carrier during the rental period; (3) whether Car Rentals' separate agreement with customers concerning insurance coverage constitutes a unilateral change in the contract for insurance between Planet and Car Rentals; (4) whether the escape clause contained in the State Farm insurance policy with the Willes is applicable; and (5) if the escape clause is not applicable, which insurance company is the primary carrier providing liability coverage.
Issues (1) and (2) can be resolved together. Section 9-101 (Ill. Rev. Stat. 1985, ch. 95 1/2, par. 9-101) requires that car rental agencies file proof of financial responsibility with the Illinois Secretary of State. A rental agency may file either a motor vehicle liability bond, an insurance policy, or a certificate of self-insurance. (Ill. Rev. Stat. 1985, ch. 95 1/2, par. 9-102.) Car Rentals met the requirements of section 9-105 by filing a rental car policy issued by Planet Insurance Company. Basically, a policy certified to the Secretary of State must contain an "omnibus coverage" clause. Each customer and individual operating the automobile with the permission of the insured must be furnished $50,000 of liability coverage by a certified insurance policy. Accordingly, under section 9-101 of the Motor Vehicle Code, the policy must be in "full force and effect" before a business can rent cars to customers.
State Farm asserts that filing the proof of financial responsibility with the Secretary of State invariably means that the business filing such proof must insure the customer renting the vehicle. Part of the rationale of State Farm is the language of section 9-101 that the policy must be in "full force and effect." Moreover, that under section 9-109 of the Motor Vehicle Code, "[i]f any insurance policy * * * filed *230 * * * shall for any reason become inoperative, the Secretary of State shall * * * cancel the certificate of compliance with the owner and it shall be unlawful for the owner to rent out the motor vehicle." Hence State Farm asserts that the agreement entered into by Car Rentals and the Willes is prohibited by statute and unenforceable. As further authority for its position, State Farm cites cases from other jurisdictions where appeals courts have declined to allow a car rental agency or automobile dealership to avoid the effects of applicable financial-responsibility laws through the inclusion of limiting language in the policies. (Metz v. Universal Underwriters Insurance Co. (1973) 10 Cal.3d 45, 513 P.2d 922, 109 Cal. Reptr. 698, (en banc); Allstate Insurance Co. v. Sullivan (Mo. App. 1982), 643 S.W.2d 21; Keystone Insurance Co. v. Atlantic Chrysler Plymouth, Inc. (N.J. Super. 1979), 167 N.J. Super. 353, 400 A.2d 872.) In each of these cases, the insurance carrier attempted to avoid liability by limiting language in the policy itself, and in each case the court rejected such attempt. We do not disagree with the rationale or the decision of the respective courts in each case; however, those cases are not dispositive of the issue before this court.
 1 The present situation does not concern limitations in an insurance policy, but a separate agreement between an insured and a customer as to which insurance will apply. There is no limiting language in the insurance policy issued by Planet which is contrary to the financial-responsibility laws. Nonetheless, State Farm asserts that the separate agreement between Car Rentals and the Willes has the same effect as a limitation in an insurance policy filed with the Secretary of State and is therefore in violation of the Motor Vehicle Code. We do not agree. In Dotson v. Agency Rent-A-Car, Inc. (1981), 101 Ill. App.3d 804, 428 N.E.2d 1002, the court rejected the theory that the Vehicle Code provisions require a rental agency to furnish primary coverage in every case to the customer. In Dotson, the rental agency filed, pursuant to Vehicle Code section 9-103, a $50,000 bond as proof of financial responsibility. There, as here, the renter's insurance (State Farm) claimed that the rental agency's form of insurance should constitute primary coverage. The court disagreed and observed that "(a)ny such obligation imposed by statute on the owner of a leased vehicle should be clear, unambiguous, and free from doubt." (Dotson v. Agency Rent-A-Car Inc. (1981), 101 Ill. App.3d 804, 807, 428 N.E.2d 1002, 1005.) The court further stated:
"We do not find a basis in the statute for the assertion that the statute requires mandatory primary coverage under the facts of this case. We do not find any clear-cut legislative requirement *231 that the legislature, by enacting section 9-103, intended to subordinate the remedies available to an insured under existing policies, to those remedies provided by said statute. It is not for this court to reach such a conclusion unless the intention of the legislature is clearly expressed." (101 Ill. App.3d 804, 808, 428 N.E.2d 1002, 1005.)
We find no basis for distinguishing section 9-103 and section 9-105 with regard to the legislature imposing any type of mandatory primary insurance coverage by a rental agency. Both sections are alternatives for filing proof of financial responsibility with the Secretary of State and the "omnibus coverage" language in both sections is identical. We hold, therefore, that section 9-101 et seq. of the Vehicle Code does not mandate primary insurance coverage of rental vehicles by a rental agency when other approved alternatives are available to an insured.
State Farm also asserts that Illinois public policy requires Planet to be the primary insurer for two reasons: (1) so that renters involved in accidents will be guaranteed that there will be an independent source from which to pay claims of third parties, and (2) so that third parties will be assured that resources will be available to compensate for injuries suffered from no fault of their own. Appellant cites Fidelity General Insurance Co. v. Nelsen Steel & Wire Co. (1971), 132 Ill. App.2d 635, 270 N.E.2d 616, for the proposition that public policy requires Car Rentals to carry insurance for the vehicle rented to the Willes. In Fidelity, the vehicle rental agreement issued by Pearson's Car Service to a customer contained a term which permitted the insurer to seek reimbursement from the customer in numerous circumstances following an accident, including situations in which the lessee violated ordinances or laws, drove the vehicle outside of the ordinary course of business, or breached any term of the rental agreement. Nelson Steel & Wire rented a vehicle from Pearson's Car Service, and an employee of Nelsen, using the vehicle outside the scope of employment but with the renter's permission, was subsequently involved in an accident. The court ruled that the reimbursement provisions of the rental contract were contrary to Illinois public policy and, therefore, not enforceable. Essentially, the provisions in the rental contract converted the customer into a self-insured in almost every claim situation. Fidelity, although holding void a separate rental contract between a renter and a customer as against public policy, is not controlling in the present situation. Car Rentals gave a customer the option of choosing to be insured through Car Rentals' policy with Planet or to be insured by the customer's insurance.
*232 There can be no doubt that the main purpose behind the "omnibus coverage" clause in section 9-105 of the Vehicle Code is protection of the public against the negligent acts of persons driving rental vehicles. Moreover, in Continental Casualty Co. v. Travelers Insurance Co. (1967), 84 Ill. App.2d 200, 228 N.E.2d 141, the court stated that "the purpose of the insurance requirement under the Illinois Motor Vehicle Act is the protection of the public and not some other insurance company." (84 Ill. App.2d 200, 206, 228 N.E.2d 141, 144.) Clearly, Car Rentals did provide a means for obtaining insurance if a customer chose to use Car Rentals' insurance. Therefore, Car Rentals did protect the public by fulfilling the requirement of Illinois law by proving its financial responsibility; however, this should not require Car Rentals to provide the liability insurance to customers who prefer their own insurance. If we decided that Car Rentals was indeed required to provide liability insurance, we would be protecting some other insurance company, namely State Farm. The purpose of the financial-responsibility insurance is to protect those who would otherwise be uninsured. Car Rentals provided that option. Therefore, Car Rentals is not mandatorily liable because of the policy submitted to the Secretary of State.
It is important to emphasize that there were two agreements which could have been entered. Mr. Wille signed a specific agreement with large block letters stating:
"INSURANCE PROTECTION FOR TEMPORARY SUBSTITUTE AUTO TO BE PROVIDED BY CUSTOMER'S EXISTING INSURANCE. IF CUSTOMER'S INSURANCE FAILS FOR ANY REASON TO AFFORD COVERAGE, CUSTOMER SHALL BE SOLELY RESPONSIBLE."
The other agreement provides insurance. The two forms are not similar. They differ in color, and most importantly, they differ in price. If a customer wants to rely on Car Rentals' insurance, the cost is $18 per day. If, however, the customer wants to use his own insurance, he pays only $13.50 per day. When a customer chooses to rely on his own insurance, Car Rentals contacts the insurance company to verify coverage before a rental agreement is approved. If coverage is not verified, then the customer cannot use the lower priced rental agreement. We also note that the benefit of the lower priced rental agreement was not for Mr. Wille, but for State Farm because it paid the cost of the rental vehicle. Moreover, State Farm had done business with Car Rentals before and undoubtedly saved a substantial sum of money because of this arrangement with Car Rentals.
The Supreme Court of Wisconsin in Huset v. Milwaukee Dressed *233 Beef Co. (1970), 46 Wis.2d 317, 174 N.W.2d 740, was faced with a situation analogous to the present case. In Huset, Ruby Chevrolet, Inc., an automobile dealer, leased a new truck to Milwaukee Dressed Beef Company. The lease included the following provision:

"Lessee [(Milwaukee)] shall at all times indemnify and save and hold the Lessor [(Ruby)] harmless of and from any and all claims for personal injury (including death) or damage to property resulting from or which is incidental to the use or operation of said motor vehicle during the term of the lease. Lessee shall furnish the Lessor with policies or certificates of public liability or property damage insurance, in companies acceptable to the Lessor, insuring the Lessor against liability for injuries to persons (including death) in limits of not less than $100,000.00, to $300,000.00 and damage to or loss of use of property in limits of $50,000.00. Lessee agrees to indemnify and save harmless, Ruby Chevrolet, Inc. from any claims from injury and damage due to operation of this vehicle leased herein in excess of the limits of the PL & PD insurance policies as above set forth." (Emphasis in original.) 46 Wis. 319, 320, 174 N.W.2d 740, 741.
Ruby, in addition, had also obtained insurance on the leased automobile, specifying in the policy that it was issued to comply with Wisconsin's proof-of-financial-responsibility statutes.
The leased truck subsequently caused an accident while being driven by an employee of Milwaukee when a spare tire separated from the truck and damaged the vehicle of a third person. The claims of the third person were resolved prior to commencement of trial, and the action proceeded upon the cross-complaints of the two insurers.
The court phrased the crux of the case in question form as: "Can the parties effectively agree to indemnification provisions which are different from the plan contemplated in the statutes referred to in the blanket endorsement?" (Huset v. Milwaukee Dressed Beef Co. (1970), 46 Wis. 317, 325, 174 N.W.2d 740, 744.) The court answered yes, that Milwaukee expressly agreed to indemnify and save and hold Ruby harmless from any and all claims.
"A reading of this section indicates that the legislature clearly intended to provide protection to innocent third persons. Here, the public has been protected (all third-party claims have been settled); the agreement does not contravene any public policy since the parties, by express agreement, have determined who shall bear the loss as between themselves. As long as the interests and rights of third persons are not adversely affected, *234 there is no impediment to parties entering into the type of indemnity agreement contained in the instant lease." 46 Wis. 317, 326, 174 N.W.2d 740, 744-745.
Although Huset involved a lease and not a rental agreement, the reasoning of the court is persuasive. Here the public is protected by Car Rentals' procedure of validating a customer's insurance coverage before allowing the customer to enter into the noninsured rental agreement; whereas, in Huset, the public was protected by the indemnification agreement which required the lessee to maintain insurance. Both situations involve a rental agency which must comply with proof-of-financial-responsibility statutes that contain "omnibus coverage" clauses.
 2 Therefore, as to issues (1) and (2), we hold that Car Rentals fulfilled its requirement for filing proof of financial responsibility with the Secretary of State under the Vehicle Code (Ill. Rev. Stat. 1985, ch. 95 1/2, par. 9-101 et seq.). Further, that neither statutes nor public policy require that Car Rentals' insurance be primary where the customer chooses to rely on his own insurance and where Car Rentals has verified the customer's coverage within the statutory limits with the customer's insurance company.
 3 As to issue (3), we feel that Planet's insurance policy to Car Rentals permits Car Rentals to waive coverage by the language in the rental agreement. We do not see a change in the coverage of the Planet policy. On the contrary, we merely note a question of when the policy would become effective. The Planet policy becomes effective when a premium is paid by Car Rentals. The premium was not paid on the Wille's car because the insurance was being provided by State Farm. We again emphasize that the public was afforded the opportunity to get insurance coverage. Car Rentals offered insurance coverage to the Willes, but they chose to use their own company. At that point, Car Rentals took the appropriate measures in order to determine that indeed Mr. Wille had insurance coverage with State Farm. As a result, Car Rentals did not pay Planet a premium on this car; therefore, the Planet policy was not in effect. There was no unilateral change in the Planet policy by Car Rentals.
 4 Issues (4) and (5) can also be answered together. While deciding that State Farm's escape clause is not applicable, we acknowledge that the primary insurer is State Farm. State Farm's escape clause declares that it will not cover a car if it has other liability insurance. If the car has other liability insurance, then State Farm provides excess coverage. The policy wholly excludes a car:
"1) that is owned by a person in the car business, and

*235 2) whose owner has other liability insurance which applies as primary, excess or contingent coverage."
Two important questions, then, are what is "the car business" and what effect does a "temporary substitute car" have on the policy. Technically, "the car business," as defined in the State Farm policy, "means a business or job where the purpose is to sell, lease, repair, service, transport, store or park (cars)." The definition does not include the rental of cars. Rental differs from a lease in that a rental is for a short period of time. Furthermore, rental can be related to borrowing for a price, whereas leasing is more analogous to ownership because payments are made periodically in order to possess the car as if it were owned. (Hertz Corp. v. U.S. (D. Del. 1958), 165 F. Supp. 261, 262.) Hence, Car Rentals is not technically "in the car business" according to State Farm's policy.
More important, however, than the distinction between rental and leased cars is the coverage of a "temporary substitute car." According to the State Farm policy, a "temporary substitute car":
"means a car not owned by you or your spouse, if it replaces your car for a short time. Its use has to be with the consent of the owner. Your car has to be out of use due to its breakdown, repair, servicing, damage or loss. A temporary substitute car is not considered a non-owned car."
A temporary substitute car is insured by State Farm according to the policy. Clearly, Mr. Wille had a temporary substitute car. He even signed an agreement which stated clearly at the top that it was a temporary substitute. We are of the opinion, therefore, that the vehicle used by the Willes was a temporary substitute car rented to them through their insurance company by a business which is not technically in "the car business." As a result, State Farm's escape clause is not applicable.
 5 In regards to what company is the primary insurer (issue 5), the previous discussion of issue (4) leads us to believe that it is State Farm. As is determined by testimony in the trial court and by a phrase on the rental agreement form  "Insurance Car Rentals * * * Serving the Insurance Industry"  Car Rentals performs a service primarily to the car insurance industry. In this particular case, the Willes were referred to Car Rentals by State Farm for the single purpose of renting a temporary substitute car. Car Rentals went through its normal process of checking with the insurance company and, finding an insurance policy in effect, issued a car to Mr. Wille as a temporary substitute with State Farm paying the rental price and providing the liability insurance. In order for State Farm to save on the rental *236 cost, the Willes opted for their own insurance coverage. This option in no way appears to be contrary to the policy issued by State Farm because State Farm insures temporary substitute cars.
Moreover, since Illinois statutes or public policy do not require Car Rentals to mandatorily supply primary insurance coverage to customers, we determine that the Planet Insurance policy with Car Rentals was not providing primary insurance coverage because no premium was paid for coverage of the Willes' rental vehicle.
For all of the above mentioned reasons, the trial court is affirmed.
Affirmed.
BARRY and WOMBACHER, JJ., concur.